IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 1:16-cv-01801-CBS

JAMES HENRY KOSKINAS, II,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

    This action comes before the court pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c) for review of the Commissioner of Social Security's final decision denying James Henry Koskinas's ("Plaintiff") application for Supplemental Security Income ("SSI"). On September 21, 2016, the parties consented to the magistrate judge's jurisdiction to "conduct any and all further proceedings in this case, including the trial, and [to] order the entry of final judgment." Doc. 15. Accordingly, the case was referred to this court on November 23, 2016. Doc. 19. The court has carefully considered the Complaint (filed July 14, 2016) (Doc. 1), Plaintiff's Opening Brief (filed October 22, 2016) (Doc. 16), Defendant's Response Brief (filed November 10, 2016) (Doc. 17), Plaintiff's Reply (filed November 22, 2016) (Doc. 18), the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

**BACKGROUND**

In April 2013, Plaintiff filed an application for SSI, alleging a disability onset date of June 6, 2010. (*See* Social Security Administrative Record (hereinafter "AR") at 107, 274-79). Plaintiff alleged that his ability to work was limited by chronic back pain, depression, anxiety, bipolar disorder, diabetes, blindness in his left eye, and severe joint pain. *See Id.* at 296. Plaintiff was born on September 2, 1964, and was 48 years old on the date of his alleged disability onset. *Id.* at 114, 293. He received his GED and completed some college course work, and has worked in a variety of jobs including as a cashier and a small business owner. *Id.* at 130-32, 297. After his initial application was denied, Plaintiff requested a hearing, which was held on September 4, 2014, before an Administrative Law Judge ("ALJ"). *See Id.* at 121-77, 222-25.

Plaintiff was represented by counsel at the hearing and testified that his mental disabilities limited his ability to interact with people. *Id.* at 142. He also testified that he did not have any strength in his left knee, and that his left leg functioned "like a crutch instead of a leg." *Id.* at 144. He stated that his back pain would prevent him from sitting or standing for prolonged periods of time. *Id.* at 146-47. He testified that he could not stoop to pick anything up, could not twist, could not bend at the waist, and did not have the strength to push or pull anything. *Id.* at 151-52. He also estimated that he could, at most, carry a gallon of milk in each hand for a distance of twenty feet. However, Plaintiff also testified that he (1) tried to do 20 to 40 minutes of yoga per day; (2) went grocery shopping three times per month; (3) cared for his dog; (4) mowed his lawn; (5) cooked for himself; (6) did his own laundry; and (7) drove a manual transmission car. *Id.* at 134-41.

A vocational expert ("VE") also testified at the hearing. *Id.* at 156-76. The VE testified that Plaintiff's prior work experience was classified as ranging from "light" to "medium" by the

Dictionary of Occupational Titles exertional guidelines. *Id*. at 157-58. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and vocational background as Plaintiff — had the following limitations: (1) lift 20 pounds occasionally, and 10 pounds frequently; (2) standing and walking up to six hours, and sitting up to two hours; (3) never operate foot controls on the left side; (4) never climb ladders, ropes, or scaffolds; (5) never crawl; (6) occasional crouching, kneeling, and stooping; (7) occasional climbing of stairs and ramps; (8) avoid even moderate exposure to extreme cold; (9) avoid all exposure to unprotected heights and hazardous machinery; and (10) occasional limitation in depth perception due to extreme limitations in vision in the left eye. *Id*. at 159-60. The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous jobs as he had performed them. *Id*. at 161. The VE did testify, however, that Plaintiff would be able to perform work as a small business owner as that work was normally performed. *Id*.

The ALJ then asked the VE to assume that the previous individual could only stand for 30-minute intervals before needing to sit, and could only sit for two hours before needing to change positions. *Id*. at 162. The VE testified that the small business owner occupation would still be viable under those additional limitations. *Id*. The VE also testified that someone with those limitations could work as an "order filler," which is classified as a "light" exertional job with 880,000 positions available nationally. *Id*. at 164. The VE testified that her opinion was based on both the Dictionary of Occupational Titles and her own professional experience. *Id*. at 165.

The ALJ then posited an individual who — in addition to the limitations of the second hypothetical — would also be limited to "no long-term interaction with the public and no

working as a member of a close team with fellow employees." *Id.* at 166. Based on those limitations, the VE concluded that all past work, and the position of order filler, would be precluded. *Id.* The VE did identify two other "unskilled" jobs that would allow for brief interactions and a sit/stand option: (1) laundry worker (430,000 National); and (2) mailroom clerk (102,000 National). *Id.* at 171.

The ALJ then asked the VE to assume an individual who was limited to sedentary exertional levels and who would need to stand and stretch or change positions at 30-minute intervals. *Id.* at 168. The VE identified two sedentary positions that would satisfy those limitations: (1) data entry operator (530,000 National); and (2) purchasing clerk (70,000 National). *Id.* at 170.

Plaintiff's counsel then asked whether any employment would be compatible with an individual who engaged in disruptive behavior. *Id.* at 172. The VE testified that there would not be any tolerance for such behavior. *Id.* In response to further questioning, the VE also testified that employers were likely to tolerate between 5 to 10 percent off-task behavior, but also stated that chronic accuracy issues would not be tolerated. *Id.* at 174.

On October 16, 2014, the ALJ issued her decision denying benefits. *Id.* at 104-120. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since April 15, 2013. *Id.* at 109. At step two, the ALJ found that Plaintiff suffered from the following severe

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

impairments: left eye blindness (status post glaucoma), lumbar spine degenerative disc disease, left leg osteoarthritis, and pelvis/left hip osteoarthritis. *Id*. She further concluded that although Plaintiff had been diagnosed with anxiety/post-traumatic stress disorder, depression, bipolar disorder, and substance abuse disorder, there was insufficient evidence to conclude that these impairments imposed more than a minimal limitation on Plaintiff's ability to perform basic mental work-related activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 111.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b) except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to standing-walking six hours and sitting two hours in an eight-hour workday; can never use foot controls with the left foot; can never crawl, or climb ladders, ropes, or scaffolds; is limited to occasionally crouching, kneeling, stooping, and climbing ramps and stairs; must avoid even moderate exposure to extreme cold, and all exposure to heights and hazardous or moving machinery; is limited to jobs requiring no more than occasional depth perception; and must have a sit-stand option because cannot stand more than 30 minutes.

*Id*.

In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence, including the opinions of two state agency medical consultants. The ALJ found that, although Plaintiff's medical records established that Plaintiff's impairments would reasonably be expected to cause his symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were "not entirely credible." *Id*. at 113.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff was capable of performing his past relevant work as a small business owner. *Id.* at 114. The ALJ also found, alternatively, that: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant also acquired work skills from past relevant work which are transferable to other occupations, with jobs existing in significant numbers in the national economy." *Id.* Specifically, the ALJ found that Plaintiff could work as an order-filler. *Id.* at 115. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id.* Accordingly, Plaintiff's application for SSI benefits was denied.

Thereafter, Plaintiff requested review of the ALJ's decision. *Id.* at 102-103. Following his request for review, Plaintiff submitted additional medical records covering the period of December 2014 through March 2016. *Id.* at 8-101. The Appeals Council denied his request for review on May 10, 2016. *Id.* at 1-7. In its decision, the Appeals Council noted that it had looked at the additional medical records, but it refused to consider them because the new information post-dated the ALJ's written decision. *Id.* at 2. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on July 14, 2016. (Doc. 1). The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse

an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff ostensibly makes three arguments. In reality, however, Plaintiff has but one contention: the Appeals Council erred in failing to consider the new medical evidence.[2] The court perceives no reversible error.

---

[2] In his "second" argument, Plaintiff contends that the ALJ erred in failing to consider the new medical records. Doc. 16 at 23-25. The argument is illogical. It is undisputed that the ALJ did not have access to these records at the time of her order; thus, there was no fault in failing to consider them. The court, therefore, construes Plaintiff's arguments in this regard as a contention that the new medical records are material and would have changed the outcome of this case. Plaintiff's "third" argument is simply another statement that the new medical records were material and justify remand. Consequently, the court solely addresses whether the Appeals Council erred in its assessment of the newly proffered medical records.

The submission of new evidence, in the context of an application for SSI benefits, is governed by 20 C.F.R. § 416.1470, which states that the Appeals Council will consider additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Id*. at § 416.1470(a)(5). If the Appeals Council determines that the newly submitted evidence is not new, material, or temporally relevant and, therefore, declines to consider it, that determination is reviewed *de novo*. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (citation omitted). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Id.* (citation omitted); *see also Lawson v. Chater*, 83 F.3d 432, at *2 (10th Cir. Apr. 23, 1996) (unpublished) ("Evidence is new within the meaning of [20 C.F.R. § 416.1470(b)] if it is not duplicative or cumulative" and "Evidence is material to the determination of disability if there is a reasonable possibility that [it] would have changed the outcome").

Here, Plaintiff submitted nearly one hundred pages of additional medical records. AR at 8-101. However, with respect to a majority of these documents, Plaintiff fails to offer any well-developed arguments regarding any error by the Appeals Council. Doc. 16 at 20-25. Indeed, the only documents addressed in any detail include: (1) an MRI of Plaintiff's left knee, dated January 13, 2016 (AR at 8-9); (2) an MRI of his lumbar spine, dated January 13, 2016 (AR at 10-11); and (3) a treatment note from Valley-Wide Health Systems, Inc., dated March 2, 2016 (AR at 24-26). This court will not make arguments on behalf of parties, which they have not made for themselves.[3] *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not

---

[3] To the extent Plaintiff tries to make arguments regarding other pieces of evidence in his Reply, this court does not consider arguments made for the first time in a reply brief. *United States v. Harrell,* 642 F.3d 907, 918 (10th Cir.2011) ("arguments raised for the first time in a reply brief are generally deemed waived").

this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). Thus, the court will only address the three aforementioned medical records.

With respect to the MRIs of Plaintiff's left knee and his back, Plaintiff notes that the reports characterize the tear in his meniscus as "chronic," and his spinal stenosis as "congenital." He further argues that these medical records "buttress his statements concerning the limitations he experiences." Doc. 16 at 22. Even if this court assumes that the use of the words "chronic" and "congenital" — without more — rendered these medical records chronologically relevant, the court would nevertheless conclude that there is no reasonably probability that these records would have changed the outcome. Contrary to Plaintiff's bald assertions, these MRI reports do nothing to establish additional functional limitations. Rather, they merely support the existence of medical impairments in Plaintiff's back and knee. This, however, has never been in dispute. Thus, these records are immaterial. *See Chambers*, 389 F.3d 1144 ("[T]he evidence indicated at most the mere presence of a condition with no vocationally relevant impact – a patently inadequate basis for a disability claim.").

Plaintiff also relies on a treatment note, wherein an unidentified[4] medical provider stated: "You were born with back problems that have kept you from doing any gainful employment." AR at 24. Apart from its incomplete and unattributed nature, this record is problematic for three primary reasons. First, although this record states that Plaintiff's back problems have kept him from gainful employment, the record does not specify when these alleged limitations began in

---

[4] The Commissioner attributes this note to Licensed Practical Nurse Crawford. Doc. 17 at 9. Although LPN Crawford apparently measured Plaintiff's vital signs, it is not at all clear that she authored the remainder of the note. This is particularly so in light of the fact that the note's author discusses making referrals to other providers and writing prescriptions for medication, which LPNs are not authorized to do.

relation to the ALJ's written opinion. Thus, this document is chronologically irrelevant. Second, even if this record was chronologically relevant, the statement regarding the existence of back problems simply reiterates the ALJ's conclusion that Plaintiff had a severe back impairment. Third, this statement — like the MRIs — fails to establish any functional limitations. It merely makes a conclusory statement about Plaintiff's ability to work, which is a determination reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1)-(2). Consequently, the court concludes that the Appeals Commission did not err when it declined to consider this additional evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Koskinas was not disabled within the meaning of Title XVI of the Social Security Act and, therefore, not eligible to receive Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 7th day of July, 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge